# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JASON WILSON,                )
                             )
      Petitioner,      )
                             )
v.                           )    Case No. CIV 11-016-RAW-KEW
                             )
MIKE ADDISON, Warden,        )
                             )
      Respondent.      )

## REPORT AND RECOMMENDATION

      This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, attacks his conviction and sentence in Adair County District Court Case Number CF-2008-58 for Assault and Battery with a Deadly Weapon (Count 1) and Unlawful Possession of Marijuana (Count 2).[1] He sets forth one ground for relief:

> Petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

He presents three parts to his claim:

> (A)   Trial counsel erroneously believed that the hammer and screwdriver were not deadly weapons, but instead were simple tools. Because trial counsel had no hope of negating one or more of the elements of the offense, the only conceivable strategy she could have had was to persuade the jury to impose a low sentence after hearing sufficient mitigating evidence. Trial counsel also failed in this endeavor. Trial counsel barely touched on Petitioner's military service, and didn't offer any evidence regarding Petitioner's medical condition (PTS [sic] and Anti [sic] Personality Disorder), which were complicated further by his combat experience.

> (B)   Trial counsel was ineffective for advising Petitioner to decline the State's plea offer for a five-year probation term. Counsel's advice here was unreasonable because it was predicated upon her mistaken belief that the hammer and screwdriver were not (and could not be) deadly weapons.

---

[1] Petitioner raises no claims regarding the marijuana conviction.

(C) Trial counsel was ineffective for advising Petitioner to waive lesser-included offenses for assault with a dangerous weapon, which carries a lighter sentence. Trial counsel advised Petitioner to waive lesser-included offenses based upon her (same) mistaken belief that the screwdriver and hammer were not intended as deadly weapons.

(Docket No. 1 at 5). The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and has submitted the following records to the court for consideration in this matter:

    A.    Petitioner's direct appeal brief.

    B.    The State's brief in petitioner's direct appeal.

    C.    Summary Opinion affirming petitioner's judgment and sentence. *Wilson v. State*, No. F-2008-1157 (Okla. Crim. App. June 4, 2010).

    D.    Petitioner's application for evidentiary hearing, filed in the Oklahoma Court of Criminal Appeals on June 15, 2009.

    E.    Transcripts of the preliminary hearing, jury trial, and sentencing.

    F.    Original Record in Adair County District Court Case No. CF-2008-58.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The State set forth the facts of petitioner's case in its direct appeal brief:

> Robert Wilson (no relation to the defendant) and Sharon Adair were working at Eagle Creek, a facility for the rehabilitation of adolescent Native American males, on March 28, 2008. (Tr. 158, 209). Jamie Wilson, the ex-wife of the defendant, also worked at Eagle Creek; however, Ms. Wilson was

late for work that evening as her car battery had died. (Tr. 285).² Around 11:45 p.m. the defendant arrived at Eagle Creek and began beating on the doors. (Tr. 211). Mr. Wilson called Eagle Creek security, and Ms. Adair called 911. (Tr. 166, 212). Mr. Wilson went out a side door to confront the defendant. Mr. Wilson told the defendant that his ex-wife was not there. (Tr. 213). The defendant turned and gave Mr. Wilson a "weird grin" then came after him with a claw hammer raised over his head. (Tr. 213). Mr. Wilson was able to take the hammer away from the defendant. The defendant then pulled a screwdriver from his back pocket, and with both hands, stabbed the screwdriver downwards into Mr. Wilson's shoulder. (Tr. 213). Luckily, Mr. Wilson was wearing a heavy denim jacket, and the screwdriver did not pierce his skin, but bruised Mr. Wilson rather badly, further, the force of the blow knocked Mr. Wilson to the ground. (Tr. 213, 215).

Mr. Wilson fought to get to his knees while the defendant was repeatedly stabbing at Mr. Wilson with the screwdriver in the rib cage, shoulder, back, head, and ear. (Tr. 214-15). Ms. Adair heard the scuffle and looked out the side door to get a look. She saw Mr. Wilson on the ground with the hammer nearby. (Tr. 169-71). Ms. Adair attempted to get the hammer, but the defendant punched her in the chest. (Tr. 171). Ms. Adair, stumbled away but tried again to get the hammer, this time the defendant punched her in the head. (Tr. 172). Ms. Adair went back a third time and was punched in the arm by the defendant. (Tr. 172-173).

Once on his knees, Mr. Wilson grabbed the hammer, blocked the next thrust of the defendant with his left arm, then swung the hammer at the defendant with his right arm, striking the defendant in the left cheek. (Tr. 217). Mr. Wilson reared back to swing the hammer again; this time the defendant backed away. (Tr. 218). Mr. Wilson used this opportunity to wrap himself around the defendant (Tr. 218). The defendant struggled, but once he realized he could not get away, she submitted to Mr. Wilson's hold. (Tr. 218). Cyrus Moore, a part-time security guard at Eagle Creek arrived and placed the defendant in handcuffs. (Tr. 147). The defendant told Mr. Moore that he had drug paraphernalia in his vehicle. (Tr. 147). A search of the defendant's vehicle was conducted and marijuana and a glass pipe were found. (Tr. 122).

(Docket No. 6-2 at 2-4).

On direct appeal the Oklahoma Court of Criminal Appeals (OCCA) found no merit in petitioner's claims:

Wilson has not shown that defense counsel was ineffective. *See Hanson v. State*, 206 P.3d 1020, 1031 (Okla. Crim. App.), *cert. denied*, 558 U.S. 1081 (2009). Counsel's decisions regarding the defense to pursue at trial, her advice to reject the State's plea offers, and to waive lesser-included offense

---

² Ms. Wilson arrived at 2:00 a.m. (Tr. 285).

3

> instructions, were reasonable strategy decisions under the circumstances. That the strategy proved unsuccessful is not grounds for branding counsel ineffective. Absent a showing of incompetence, Wilson is bound by the decisions of his counsel and mistakes in tactics and trial strategy do not provide grounds for subsequent attack. *See Gilson v. State*, 8 P.3d 883, 928 (Okla. Crim. App. 2000), *cert. denied*, 532 U.S. 962 (2001). Counsel's decisions in this case were reasonable trial strategy that we will not second guess on appeal. *See Hanson*, 206 P.3d at 1032.
>
> Nor was counsel ineffective for failing to present mitigating evidence. This Court has previously held that when the defendant has demanded that the jury assess punishment or the trial judge has allowed the jury to assess punishment, "there is simply no provision allowing for mitigating evidence to be presented in the sentencing stage of trial." *Malone v. State*, 58 P.3d 208, 210 (Okla. Crim. App. 2001). *See also McGee v. State*, 127 P.3d 1147, 1149 (Okla. Crim. App. 2005) (holding mitigating evidence is inadmissible in the guilt and sentencing phase of a non-capital trial). Counsel cannot be labeled ineffective for failing to present mitigating evidence. Wilson's claim that trial counsel was ineffective is denied.

*Wilson v. State*, No. F-2008-1157, slip op. at 2-3 (Okla. Crim. App. June 4, 2010) (footnote omitted).

**Trial Strategy**

The respondent alleges the Oklahoma Court of Criminal Appeals correctly determined that petitioner was not denied the effective assistance of trial counsel, and habeas relief cannot be granted. "There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-part test for determining the validity of a habeas petitioner's claim of ineffective assistance of counsel:

> . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . .

*Strickland*, 466 U.S. at 687. Courts are free to address these two prongs in any order, and failure under either is dispositive. *Id*. at 697.

> [R]eview of counsel's performance under the first prong of *Strickland* is a highly deferential one. Our case law makes clear that [c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and that a petitioner bears a heavy burden when it comes to overcoming that presumption. As we have explained: To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong.
>
> The challenge is even greater for a petitioner under § 2254, as our review in such circumstances is doubly deferential. In other words, when assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [w]e defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client. Moreover, we recognize that, because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has not satisfied that standard.

*Byrd v. Workman*, 645 F.3d. 1159, 1168 (10th Cir. 2011) (citations and internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 132 S.Ct. 763) (2011).

The Oklahoma statute defining petitioner's crime states, "[a]ny person who commits any assault and battery upon another . . . by means of any deadly weapon, or by such other means or force as is likely to produce death, shall upon conviction be guilty of a felony . . . . Okla. Stat. tit. 21, § 652(C). The evidence at trial showed that petitioner did not strike Mr. Wilson with the hammer. Counsel's strategy was to show that the screwdriver was not used as a deadly weapon, as evidenced by the non-life-threatening injuries Mr. Wilson received. Counsel attempted to draw a conclusion that if petitioner had used the screwdriver in such a brutal manner as likely to produce death, the victim's injuries would have been far greater. The court finds this strategy of trying to show that the prosecution had overcharged petitioner did not constitute ineffective assistance of counsel under *Strickland*.

Petitioner also argues counsel was ineffective in failing to adequately address alleged mitigating evidence of petitioner's military service and the effect of his post-traumatic stress disorder (PTSD) and antisocial personality disorder. The trial testimony of two witnesses provided evidence of petitioner's military service, including a combat tour in Iraq. (Tr. 281,

5

292-93).

Petitioner further asserts that evidence of his having witnessed traumatic events in combat and the resulting effects on his mental health could have mitigated his crime, and he disagrees with the OCCA's determination that Oklahoma case law does not allow the introduction of mitigating evidence in non-capital offenses. *See Wilson*, No. F-2008-1157, slip op. at 2-3. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).

According to the State's appellate brief, if petitioner's military record had been admitted into evidence, the jury would have learned that while in the military, he was arrested twice for two alcohol violations: (1) public intoxication, and (2) domestic violence when he put his hand through a car window as his wife was trying to leave him. (Docket No. 6-2 at 17). After completing a 90-day alcohol treatment program, he was administratively discharged from the Army for excessive drinking. (Docket No. 6-2 at 16-17). This court fails to see how the full military record of petitioner's behavior and discharge would have mitigated his crimes.

As for petitioner's mental condition, a psychological evaluation was ordered by petitioner's appellate counsel. The physician's summary stated:

> [Petitioner] had not been taking his antidepressant for several months and was coping with the end of his marriage, but there is not indication of an increase in his PTSD symptoms. Mr. Wilson's description and the witness accounts of the alleged assault do not suggest that he was having a dissociative flashback. Rather, they indicate that Mr. Wilson went to his ex-wife's place of work in an attempt to persuade or intimidate her into returning to the marriage. It was an attempt to regain what he say as [sic] rightfully his. Therefore, it is my opinion that his actions in this situation were not driven by the PTSD. Instead, he was acting on his antisocial personality traits and his level of intoxication.
>
> While [petitioner] does have mental illness, PTSD, there is no

6

> indication of impaired perception or thinking at the time of the alleged crime. Therefore, [petitioner's] mental illness did not interfere with his ability to conform his behaviors to the requirements of the law.

(Docket No. 6-2 at 18) (quoting Appellate Application for Evidentiary Hearing, Exhibit 6 at 7-8). After careful review of the record, this court finds the OCCA's decision was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. The court further finds the determination by the OCCA was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). This ground for habeas relief fails.

**Plea Offers**

Petitioner was sentenced to 26 years' imprisonment. *Wilson*, No. F-2008-1157, slip op. at 1. Before trial, however, the State offered him two plea agreements. The first offer on April 23, 2008, would have resulted in a five-year suspended sentence (Docket No. 6-4 at 28), and the second offer on June 3, 2008, was for 30 years' incarceration, with 15 years suspended (Docket No. 6-4 at 30-31).

Petitioner claims trial counsel advised him not to accept the first plea offer, because he could get a better deal after the preliminary hearing. He maintains he would have accepted the offer if counsel had not advised him to wait, and if counsel had not been planning a defense based on the hammer and screwdriver not being deadly weapons. Counsel also allegedly told petitioner that the first offer was "'setting [him] up' by offering a suspended sentence on one charge and deferred on the others." Therefore, if the State later revoked his sentence, he would end up with a harsher sentence. (Docket No. 6-4 at 18).

The second offer was presented after the preliminary hearing. Petitioner asserts counsel advised him that the second offer was "bogus," because petitioner had no prior convictions, and the victims' injuries were not severe. Counsel further advised that the sentence was too harsh for someone with no prior convictions, based on the facts of the case. (Docket No. 6-4 at 18).

As discussed above, trial counsel's strategy was to obtain an outright acquittal, based

7

on the theory that the screwdriver was not used as a deadly weapon. The OCCA found that counsel's advice to reject the plea offers was a "reasonable strategy [decision] under the circumstances" that would not be second-guessed on appeal. *Wilson*, No. F-2008-1157, slip op. at 2. "[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983), *cert. denied*, 517 U.S. 1235 (1996) (citation omitted). The court finds the OCCA's denial of this ground for relief was in accordance with 28 U.S.C. § 2254(d).

**Lesser-Included Offenses**

Petitioner alleges trial counsel was ineffective in waiving all lesser-included offenses to Assault and Battery with a Deadly Weapon, because the trial strategy was to convince the jury that the hammer and screwdriver were not deadly weapons, and the victim's injuries would have been more serious if the screwdriver had been used as a deadly weapon. The respondent asserts counsel's trial strategy and advice to petitioner to waive any lesser-included offense instructions was a strategic decision not subject to second-guessing on habeas review. Furthermore, petitioner personally waived the lesser-included offense instruction as part of an "all or nothing" strategy. (Tr. 272-73).

In Oklahoma "[a] defendant is free to adopt an 'all or nothing' strategy with regard to any lesser-offense alternatives. . . ." *Spence v. State*, 177 P.3d 582, 584 (Okla. Crim. App. 2008). Trial counsel attempted to show that the victim's injuries would have been far more serious, if the screwdriver had been used as a deadly weapon. The OCCA found the fact that the strategy was unsuccessful did not demonstrate ineffective assistance of counsel. *Wilson*, No. F-2008-1157, slip op. at 2. This determination also was consistent with federal law under 28 U.S.C. § 2254(d).

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given fourteen (14) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 24th day of February 2014.

_____
**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**